UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 11-2126(DSD/FLN)

Bel Canto Design, Ltd., a
Minnesota corporation,

       Plaintiff,

v.                                           **ORDER**

MSS HiFi, a New York corporation,
and John Boey a/k/a Johnny Boey,

       Defendants.

> Benjamin J. Court, Esq., John Harper III, Esq. and Messerli & Kramer, P.A., 1400 Fifth Street Towers, 100 South Fifth Street, Minneapolis, MN 55402 and Mark A. Larsen, Esq. and Larsen, Christensen & Rico, PLLC, 50 West Broadway, Suite 400, Salt Lake City, UT 84101, counsel for plaintiff.
>
> Troy J. Hutchinson, Esq., Benjamin E. Gurstelle, Esq. and Briggs & Morgan, PA, 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402, counsel for defendants.

This matter came before the court on August 12, 2011, upon the motion for a temporary restraining order (TRO) by plaintiff Bel Canto Design, Ltd. (Bel Canto). Bel Canto and defendants MSS HiFi, Inc. (MSS HiFi) and John Boey all appeared through counsel. Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the TRO.

**BACKGROUND**

Bel Canto is a Minnesota corporation that manufactures high-end audio equipment. Bel Canto distributes its products through a

network of authorized dealers.  MSS HiFi is a New York corporation that sells audio equipment over the internet and from two stores in New York.  MSS HiFi purchased Bel Canto products for two years as an authorized dealer.  Boey Decl. ¶ 6, ECF No. 22.  During that time, MSS HiFi purchased and sold over $50,000 in Bel Canto products.  Id.  In November 2009, Bel Canto ended its authorized-dealer agreement with MSS HiFi.  Id. ¶ 3.  Thereafter, MSS HiFi continued to sell Bel Canto products.

In March 2011, Bel Canto learned that MSS HiFi had sold a Bel Canto product under the serial number C5i-076.  See McCormick Supplemental Decl. ¶¶ 4–5.  The serial number was counterfeit.  Id. ¶¶ 16–19 (external serial number C5i-076[1] attached to product identified by internal serial numbers as C5i-106).  The sale occurred six weeks earlier.  See id. Ex. 1.  Bel Canto began to investigate and discovered that the authorized dealer that originally purchased C5i-106 from Bel Canto suddenly began placing orders ten times as large as had been its practice.  Id. ¶ 20.  Bel Canto also discovered that MSS HiFi uses its website to solicit "high-end audio dealers" to purchase products for MSS HiFi:

> Need to place a $50k or $100k order with a manufacturer in order to get the proper discount?  JB Audio can be your secret investor.  We are very discreet [*sic*], and we already have arrangements with a number of

---

[1] The real C5i-076 is in Finland, where it was reviewed in the current issue of a Finnish HiFi magazine.  See McCormick Supplemental Decl. Ex. 20.

2

>     dealers to keep the big brothers guessing.  We
>     will do everything in our power to protect
>     your interest.

McCormick Decl. Ex. 4.  Bel Canto terminated its relationship with the authorized dealer that originally purchased C5i-106.

Based on images of serial numbers posted on the MSS HiFi website, Bel Canto determined that MSS HiFi was selling several products with counterfeit serial numbers.  For example, MSS HiFi advertised a product with serial number LNS-149.  <u>Id.</u> Ex. 23.  The serial number was false: the real LNS-149 remains in inventory at an authorized Bel Canto dealer in England.  McCormick Supplemental Decl. ¶ 24; <u>id.</u> Exs. 14-18.

At some point thereafter, and until late in the day on August 11, 2011, the MSS HiFi website proclaimed:

>     MSS HiFi is the exclusive online headquarter
>     for all Bel Canto Design products.
>
>     Announcing a special ceremony at our NYC store
>     on August 3rd, 2011 at 5pm. The entire lineup
>     of Bel Canto products will be on display and
>     sold at special discounts.  Industry first: we
>     will show you the retail price sheet and
>     dealer cost sheet to help you make informed
>     buying decision [*sic*] just like the most
>     transparent new car dealers. Special guest PJ
>     [*sic*] Zornosa with MSS bikini models will be
>     at our store to kick off our first annual
>     Samosa Eating Contest to win a free Bel Canto
>     USB LightLink ($349 MSRP)!
>
>     Warning: you cannot win if you eat more than 7
>     samosas.
>
>     RSVP required — email or call Amanda to
>     reserve. Free drinks and samosas. Audiophile
>     delights Bel Canto reference system to be

> personal [*sic*] set up and demonstrated by the
> Audio Robin Hood himself.
>
> Do not miss out on this opportunity to win a
> free Bel Canto USB LightLink at a whopping
> $349 retail price
> $210 regular dealer's cost
> $178.50 with quantity discount
> $157.50 demo cost
> $8 is the actual cost according to Bel Canto
> requisition, that's $7 for the unit plus $1
> packaging.
>
> This is why you cannot win if you eat more
> than 7 samosas because these gourmet fresh
> made samosas cost us $1 each.

Zornosa Decl. Exs. 1–2.

MSS HiFi is not an authorized dealer of Bel Canto products. Id. ¶ 9. It is not the exclusive online dealer of Bel Canto products. Id. Bel Canto sales manager P.J Zornosa was not invited to the purported event. Id.

On July 22, 2011, defendants also posted statements falsely attributed to Bel Canto's attorneys, Mark A. Larsen and Lisa C. Rico:

> **Larson** [*sic*] **and Ricko** [*sic*] posted on Friday,
> July 22, 2011 10:38:15 AM GMT+5
>
> We confirm that PJ Zormosa [*sic*] will be there
> to officially endorse MSS HiFi as the Online
> Headquarter [*sic*] for all BCD products. We
> feel that John Boey, as the President of the
> Leaders of the Free World, is best suited to
> present our products to a boundary-less
> worldwide audience. We certify that BCD
> products converted to foreign AC voltage by
> the master technician at MSS HiFi perform 100%
> up to specs, and is [*sic*] no different than

4

>       any 220-240V products that we ship overseas.
>       Mark A. Larson [*sic*] and Lisa C. Ricko [*sic*]
>       Attorneys for BCD.

Zornosa Decl. Ex. 2. Also on July 22, 2011, Boey sent an email to Bel Canto that stated:

>       That's it? Only false claims of infringements
>       to eBay? You should also consider suing me in
>       court. I've been dying to go to court as the
>       President of the Leaders of The Free World.
>
>       No big deal. We'll just have to put more
>       effort into promoting Bel Canto products on
>       our own website, our NYC store, and other
>       audio classified sites. Thanks for your
>       endorsement that you posted for us on
>       www.msshifi.com. It is much appreciated.

Rico Decl. Ex. 2.

On July 28, 2011, Bel Canto began this action against MSS HiFi, claiming counterfeiting, trademark infringement and false designation of origin and affiliation in violation of sections 32 and 43 of the Lanham Act, 15 U.S.C §§ 1114 and 1125; deceptive trade practices in violation of the New York Unfair Trade Practices Act, N.Y. Gen. Bus. Law § 349, and the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43-.48; unlawful trade practices in violation of the Minnesota Unlawful Trade Practices Act, Minn. Stat. § 325D.12-15; violation of the Minnesota False Statements in Advertising Act, Minn. Stat. § 325F.67; and common-law intentional interference with advantageous contractual relationship.

On August 2, 2011, Bel Canto moved for a TRO, and the court scheduled a hearing for August 12. At the end of the hearing, the court invited the parties to submit additional briefing by August 22, 2011. The court now considers the motion for a TRO.

## DISCUSSION

As an initial matter, defendants argue that a TRO is not warranted because they are not subject to personal jurisdiction in Minnesota. A federal court "may assume jurisdiction over a nonresident defendant only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004) (citation omitted). The Minnesota long-arm statute "confers jurisdiction to the fullest extent permitted by the Due Process Clause." Coen v. Coen, 509 F.3d 900, 905 (8th Cir. 2007) (citation omitted); see Minn. Stat. § 543.19. Specifically, Minnesota extends its jurisdiction to any person who "commits any act outside Minnesota causing injury or property damage in Minnesota." Minn. Stat. § 543.19(4). A defendant need only make a prima facie showing of jurisdiction at the TRO stage. See Cohen, 509 F.3d at 904.

To satisfy due process, a defendant must have "sufficient minimum contacts" with the forum state such that maintaining the suit "does not offend traditional notions of fair play and substantial justice." Romak, 384 F.3d at 984. "Sufficient

6

contacts exist when the defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there." Coen, 509 F.3d at 905 (citation omitted). The court considers five factors to measure minimum contacts: "(1) the nature and quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents and (5) the convenience of the parties." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073-74 (8th Cir. 2004). The first three factors receive significant weight. See id. at 1074. The court "must look at all of the factors in the aggregate and examine the totality of the circumstances in making a personal-jurisdiction determination." Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010). "Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 562 (8th Cir. 2003).

Bel Canto only argues that the court has specific personal jurisdiction over defendants. Specific jurisdiction exists when the cause of action "arise[s] out of" or "relate[s] to" a defendant's activities. St. Jude Med., Inc. v. Lifecare Int'l, Inc., 250 F.3d 587, 591 (8th Cir. 2001) (citation omitted). Intentional actions outside of the forum that have consequences

felt within the forum may support personal jurisdiction over nonresident defendants. See Cohen, 509 F.3d at 906.

The court is satisfied that defendants[2] are subject to personal jurisdiction in Minnesota. First, MSS HiFi was an authorized dealer of Bel Canto products as recently as November 2009, and purchased $50,000 in products from Bel Canto in Minnesota. Such substantial contact supports a finding that MSS HiFi purposefully availed itself of Minnesota, and such contacts were reasonably close in time to the sale of counterfeit Csi-076 just over a year later. Moreover, as in Calder, the damaging effects of defendants' sale of Bel Canto products with counterfeit serial numbers, misrepresentation to consumers about the voltage configuration of Bel Canto products, false statements that it is "the exclusive online headquarter for all Bel Canto Design Products," and statement that a Bel Canto product is worth seven samosas all inflict harm on Bel Canto in Minnesota. Unlike the Missouri Long-Arm Statute at issue in Johnson, Minnesota extends jurisdiction to acts committed beyond the state when their effects are felt within Minnesota. See Johnson, 614 F.3d at 797 ("The Missouri long-arm statute confers jurisdiction to Missouri courts for torts committed *within* Missouri.").

---

[2] John Boey, as an officer of MSS HiFi, is not shielded from his own intentional torts. See Calder v. Jones, 465 U.S. 783, 789–90 (1984). Here, Bel Canto has presented evidence that Boey, as "President of the Leaders of the Free World" posted infringing comments to the MSS HiFi website.

Further, Bel Canto has provided evidence that MSS HiFi acted through a Bel Canto authorized dealer as a proxy to transact business with Bel Canto in Minnesota. As to the secondary factors, Minnesota has a strong interest in protecting trademarks, and it appears that witnesses and evidence may be located in several states and countries. See Minn. Mining & Mfg. Co. v. Rauh Rubber, Inc., 943 F. Supp. 1117, 1124 (D. Minn. 1996). For all of these reasons, the court finds that defendants have sufficient minimum contacts with Minnesota such that the exercise of personal jurisdiction comports with due process.

**I.   Dataphase**

A TRO is an extraordinary equitable remedy, and the movant bears the burden of establishing its propriety. See Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003). The court considers four factors in determining whether a TRO should issue: (1) the threat of irreparable harm to the movant in the absence of relief, (2) the balance between that harm and the harm that the relief may cause the non-moving party, (3) the likelihood of the movant's ultimate success on the merits and (4) the public interest. See Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

**A.   Irreparable Harm**

Bel Canto argues that defendants' sale of Bel Canto products with counterfeit serial numbers, false claims about being an

9

exclusive online distributor and claims about the value of Bel Canto products damage its goodwill. Defendants deny the allegations. Bel Canto, however, has presented evidence that MSS HiFi has sold and offered for sale products with counterfeit serial numbers.[3] Moreover, defendants do not deny making the false representations about Bel Canto on the MSS HiFi website.

To show irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Iowa Utils. Bd. v. F.C.C., 109 F.3d 418, 425 (8th Cir. 1996). "[P]otential loss of goodwill qualifies as irreparable harm." Id. at 426. Based on defendants' false representations and false claims, the court finds that Bel Canto has demonstrated that it is likely to suffer irreparable harm to its goodwill without equitable relief. Moreover, where as here, the misrepresentations have a tendency to deceive, harm is presumed in the context of violation of § 43 of the Lanham Act. See Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc., 633 F.2d 746, 753 (8th Cir. 1980). Therefore, this factor weighs strongly in favor of Bel Canto.

---

[3] The first sales doctrine does not apply to altered products. See Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC, 562 F.3d 1067, 1073-74 (10th Cir. 2009); see also Champion Spark Plug Co. v. Reich, 121 F.769, 773 (8th Cir. 1941).

**B.   Balance of Harms**

The court has already determined that Bel Canto's reputation and goodwill are harmed by defendants' claims and sale of altered Bel Canto products. On the eve of the TRO hearing, defendants removed the false statements from their website. Defendants also claim that they do not sell Bel Canto products with altered serial numbers. Although the evidence suggests otherwise, if true, injunctive relief will cause little if any harm to defendants. Therefore, this factor weighs in favor of Bel Canto.

**C.   Likelihood of Success on the Merits**

The court next considers the "most significant" Dataphase factor: likelihood that the movant will prevail on the merits. S & M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992). The Lanham Act makes unlawful the unauthorized:

> use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114. The Lanham Act further imposes civil liability when a person uses:

> any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or

11

>           association of such person with another
>           person, or as to the origin, sponsorship, or
>           approval of his or her goods, services, or
>           commercial activities by another person, or
>           ... in commercial advertising or promotion,
>           misrepresents the nature, characteristics,
>           qualities, or geographic origin of his or her
>           or another person's goods, services, or
>           commercial activities.

Id. § 1125(a).

In this case the evidence of false statements and altered serial numbers offered by plaintiffs suggests that they are very likely to prevail on the merits of their Lanham Act and deceptive trade claims.[4] Therefore, this factor weighs heavily in favor of plaintiffs.

**D. Public Interest**

The public interest favors protection of trademarks and trade names and protection of consumers from purchasing misrepresented products. There also is a public interest in unrestrained competition. Here, however, it appears that defendants are engaged in deceptive and unfair competition. Therefore, the public interest factor favors Bel Canto. Accordingly, based upon a balancing of the four Dataphase factors, a TRO is warranted.

---

[4] By listing these claims, the court offers no opinion on the merits of the other claims, but merely notes that plaintiffs are likely to succeed on several claims. Cf. United Healthcare Ins. Co. v. AdvancePCS, 316 F.3d 737, 742–43 (8th Cir. 2002).

**CONCLUSION**

Based on the above, **IT IS HEREBY ORDERED** that:

1. The motion for a temporary restraining order [Doc. No. 3] is granted;

2. John Boey and MSS HiFi and its officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with them, are hereby restrained from:

>   a. Selling any Bel Canto products with false, altered or counterfeit serial numbers, including but not limited to the following Bel Canto products:
>
>>   DAC 3.5VB Serial No. D35-135
>>
>>   VBS-1 Serial No. VBS-118
>>
>>   DAC 3.5VB Serial No. D35-135
>>
>>   VBS-1 Serial No. VBS-118
>>
>>   DAC 3.5VB Serial No. D35-139
>>
>>   REF500m monoblock amplifier Serial Nos. R5M-262 & R5M-263
>>
>>   C5i Serial No. C51-112
>>
>>   LNS1 Serial No. LNS-149
>>
>>   VBS-1 Serial No. VBS-152
>>
>>   DAC 1.5 Serial No. D15-220
>>
>>   DAC 2.5 Serial No. D25-156
>>
>>   REF1000m, Serial Nos. R1M-127 & R1M-128;

      b.    Claiming any affiliation with Bel Canto, including specifically that its national sales manager, P.J. Zornosa, will be attending any MSS HiFi sponsored events;

      c.    Defaming, diluting, or causing confusion with respect to Bel Canto or its trademarks in the sale of goods or services in commerce in any way;

3.    Within fourteen days of the date of this order, John Boey and MSS HiFi shall file with this court and serve on Bel Canto a report in writing under oath setting forth in detail the manner and form in which they have complied with this order;

4.    Bel Canto shall provide security to defendants in the form of a bond or deposit of cash with the Clerk of Court in the amount of $5,000;

5.    This order shall remain in effect for fourteen days.

Dated:  August 25, 2011

                                                s/David S. Doty  
                                               David S. Doty, Judge  
                                               United States District Court